UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MALCOLM DESIR<br><br>Defendant | CRIMINAL No. 23-cr-10309-WGY |

## SENTENCING MEMORANDUM OF THE UNITED STATES

The United States respectfully submits this Sentencing Memorandum in the above-captioned case, currently scheduled for sentencing on June 18, 2025. The government believes that their joint recommendation of 84 months of incarceration is an appropriate sentence in this matter. Following the completion of this sentence, the parties also request that the defendant be on supervised release for a period of 36 months, the first 12 months of which to be served under home detention. In addition, the defendant is required to pay the mandatory special assessment of $800 in this case.

**I.   Procedural History**

On November 2, 2023, the defendant, Malcolm Desir, (hereafter "the defendant" or "DESIR") was arrested and ordered detained in federal custody for the instant offense. [ECF. 7,8, & 10]. On February 19, 2025, the defendant pled guilty to Counts Two through Eight, and Eleven of the Indictment charging him with: one count of Trafficking in Firearms, in violation of 18 U.S.C. §§ 933 (a) (1) and (3); one count of Felon in Possession of Firearms and Ammunition, in violation of 18 U.S.C. § 922 (g) (1); five counts of Distribution of and Possession with Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841 (a) (1) and (b ) (1) (C); and one count of Possession of a

Firearm in Furtherance of a Drug Trafficking Offense, in violation of 18 U.S.C. § 924 (c) (1) (A). [ECF. 56]. The government and DESIR have entered into a binding Rule 11 (c) (1) (C) Plea Agreement.

The defendant admits that he committed the crimes specified in these counts and is in fact guilty of each one. The U.S. Attorney agrees to dismiss Count Nine of the Indictment applicable to DESIR following the Court's acceptance of the parties plea agreement and the imposition of the jointly recommended sentence.

DESIR faces the following maximum penalties on County Two of the Indictment, Trafficking in Firearms, a sentence of up to 15 years of imprisonment, three years of supervised release, a fine of up to $250,000; and a mandatory special assessment of $100; on Count Three of the Indictment, Felon in Possession of Firearms and Ammunition, a sentence of up to 15 years of imprisonment,  three years of supervised release, a fine of up to $250,000; and a mandatory special assessment of $100; on Counts Four through Eight, a sentence of up to 20 years of imprisonment, three years of supervised release, a fine of up to $250,000; and a mandatory special assessment of $500; and on Count Eleven, a sentence of up to 25 years of imprisonment; a mandatory minimum sentence of five years of imprisonment, five years of supervised release, a fine of up to $250,000; and a mandatory special assessment of $100. *See* Presentence Investigation Report ("PSR") cover sheet and ¶¶ 84, 89, 91, 95, & 96.

**II.     Factual Background**

Over the summer and fall of 2023, ATF Special Agents learned from a confidential source that Cordell Miller ("MILLER") was allegedly a significant source for trafficking firearms and ammunition in and outside of the City of Boston.  The ATF purchased firearms on several dates from MILLER in Massachusetts using a confidential human source. The ATF then successfully

introduced a cooperating witness or "CW" into the operation to conduct a series of controlled purchases of firearms and narcotics utilizing MILLER. MILLER ultimately middled deals of firearms and narcotics between the CW and his two co-defendants DESIR and Alan Robinson.

### The First August 2023 Controlled Purchase (MILLER/DESIR)

In August of 2023, MILLER agreed to directly connect with the CW and provide him cocaine. ATF correspondingly conducted a controlled purchase with the CW physically and electronically surveilled by law enforcement during a purchase of the cocaine. The CW contacted MILLER via a recorded phone line to learn the location of the controlled purchase, which was Brewer Avenue in Brockton, MA.[1]

Shortly after MILLER met the CW at the location in Brockton, DESIR arrived, and MILLER introduced him to the CW. DESIR was carrying a black plastic shopping bag containing a rectangular object. The image of DESIR is below:



Once both DESIR and MILLER were in the CW's car, DESIR reached into the black plastic bag, retrieving, weighing, and packaging pressed cocaine, which DESIR then parceled out and handed the CW a bag with 3 ounces of pressed cocaine in exchange for $2,700.00 in U.S.

---

[1]. In each of the controlled purchases described herein, the same procedures were followed. Investigators utilized electronic surveillance to record the controlled purchase. Investigators searched the CW and the CW's vehicle for unauthorized money, weapons, or contraband prior to and after the controlled purchase. In addition, active electronic law enforcement surveillance was employed during the controlled purchase. The government provided the CW with prerecorded buy money to make the purchase. After the controlled purchase investigators debriefed with the CW about the transaction.

currency. DESIR provided the CW with his phone number, informing the CW that he would supply the CW with drugs when needed. The substance was later tested and yielded a positive result for cocaine. The cocaine weighed approximately 95 grams, including packaging.

### The Second August 2023 Controlled Purchase (DESIR)

Again, in August of 2023, the CW contacted DESIR using the phone number he was provided by DESIR and conducted a similar controlled purchase as described above at the same location. During this deal in the CW's car, DESIR provided the CW with three ounces of cocaine in exchange for $2,700.00 in U.S. currency. The substance was tested with a positive result for cocaine. Including packaging, the cocaine weighed approximately 85 grams.

### The First September 2023 Controlled Purchase (DESIR)

Then in September of 2023, the CW phoned DESIR once again to set up a controlled purchase this time at an address in Stoughton, MA. Once in the CW's vehicle, DESIR provided the CW with a black bag containing 5 ounces of cocaine in exchange for $4,000.00 in U.S. currency. Prior to exiting the vehicle, DESIR informed the CW that he had two firearms available for sale, a CZ 9mm and a Ruger 9mm. The CW informed DESIR that he is interested in purchasing both firearms. DESIR agreed to contact the CW at a later date/time to facilitate the sale of the firearms. The substance was later tested with a positive result for cocaine. Including packaging, the cocaine weighed approximately 143 grams.

### The Second September 2023 Controlled Purchase (DESIR)

On a second date in September of 2023, the CW phoned to conduct a controlled purchase of cocaine and a firearm, as discussed previously during the first September controlled purchase. DESIR provided the CW with the same location in Stoughton.  DESIR arrived and entered the CW's vehicle via the front passenger door. While inside the CW's vehicle, DESIR handed the CW

a Nike shoe box, which contained a firearm, ammunition, magazines, and a plastic bag containing two ounces of cocaine. The CW provided DESIR $2,700.00 in U.S. currency for both the gun and the cocaine. The drugs were tested and yielded a positive result for cocaine. The cocaine weighed about 57 grams, including packaging. The pistol in the shoe box was a Ruger P95DC 9mm with laser beam attachment, serial number 314-66843. The shoe box also included two extended magazines, two regular-size magazines, and 31 live rounds of various 9mm ammunition. The photo of the firearm and cocaine is below:



**The First October 2023 Controlled Purchase (DESIR)**

In October of 2023, the CW conducted another controlled purchase of cocaine from DESIR, who selected the Hampton Inn in Raynham, MA as the meeting place. DESIR once again entered the CW's car and provided the CW with a transparent plastic bag with three ounces of cocaine in it in exchange for $2,700.00 in U.S. currency. DESIR agreed to contact the CW at a later date/time to facilitate the sale of the CZ 9mm firearm previously described during the first controlled purchase in September of 2023.[2] After the purchase was completed, investigators followed the CW to the prearranged location, where the CW turned over a transparent plastic bag

---

[2] DESIR subsequently informed the CW that he had originally purchased this firearm two years prior from MILLER.

containing three distinct packages of cocaine, each of which was individually wrapped. The substance was tested, which yielded a positive result for cocaine. The total weight of the cocaine, considering the packaging, was 87 grams.[3]

### Execution of Search Warrants (DESIR)

On the morning of November 2, 2023, ATF executed a series of search warrants and arrest warrants for MILLER and DESIR. Agents executed DESIR's arrest as a "buy-bust;" the CW arranged in advance to purchase 9 ounces of cocaine and a firearm from DESIR in the parking lot of the Hampton Inn in Raynham-Taunton. DESIR arrived at the location and entered the CW's vehicle and began to execute the controlled purchase. ATF effected the arrest during the controlled purchase while both were in the CW's vehicle. ATF seized the bag containing the cocaine from DESIR, which tested with a positive result for cocaine. The cocaine weighed approximately 262 grams. No firearm was recovered from DESIR or his vehicle.

At DESIR's residence, the ATF recovered a sizable amount of powdered cocaine (896 grams), crack cocaine (406 grams), several bags of unknown prescription pills, drug paraphernalia, a loaded Taurus TCP handgun, serial number 36735F, and a loaded Ruger LC9 handgun, serial number 452-77387.

DESIR has a conviction for a crime punishable by imprisonment for a term exceeding one year and is prohibited from legally possessing a firearm as a felon. Specifically, on July 31, 2015, DESIR was convicted and sentenced to 18 months out of Brockton District Court (docket 1515CR4273A) for unlawful possession of a firearm and ammunition.

According to ATF agents who possess specialized knowledge and training as to the

---

[3] The total estimated weight considering packing of the powdered cocaine DESIR sold the CW over the course of the five controlled purchases was 463 grams.

identification, origin, and classification of firearms and ammunition, the firearms and ammunition possessed by DESIR and sold by DESIR to the CW were manufactured outside the Commonwealth of Massachusetts.

### III.    Legal Framework

The United States Sentencing Guidelines ("Guidelines") are "the starting point and the initial benchmark" in sentencing. Gall v. United States, 552 U.S. 38, 49-50 (2007). Following the Supreme Court's decision in Gall v. United States, "District Court judges can choose sentences that differ from the Sentencing Commission's recommendations—provided of course that they stay within the range set by the statutes of conviction and consider the sentencing factors arrayed in § 3553(a)." See e.g., Gall, 552 U.S. at 41, 49–50 & n. 6. While Gall made the Guidelines advisory, "[t]his is not a blank check for arbitrary sentencing." Id. "Judges *still* must start out by calculating the proper Guidelines range—a step so critical that a calculation error will usually require resentencing." Id. "The reason for this is simple. Congress wants judges to do their best to sentence similar defendants similarly." See Booker, 543 U.S. at 250–54, 259–60. "And starting with the Guidelines' framework—which gives judges an idea of the sentences imposed on equivalent offenders elsewhere—helps promote uniformity and fairness." See Gall, 552 U.S. at 49; Booker, 543 U.S. at 245–60.

After consulting the Guidelines, the Court must craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. § 3553 (a). See Gall, 552 U.S. at 50. In doing so, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. See 18 U.S.C. § 3553 (a). The Court must consider the nature and circumstances of the offense and the history and characteristics of the defendant; must impose a sentence that sufficiently reflects the seriousness of the crime,

7

promotes respect for the law, and provides just punishment, and the sentence should adequately deter criminal conduct, protect the public, and provide any necessary education, training or treatment. *See* 18 U.S.C. §§ 3553 (a) (2) (A)-(D). The Court must also strive to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct. *See* 18 U.S.C. § 3553 (a) (6). After determining the appropriate sentence, the Court should adequately explain its rationale to "allow for meaningful appellate review and to promote the perception of fair sentencing." *See* Gall, 552 U.S. at 50. [4]

"Variances are 'non-Guidelines sentences that result from the sentencing judge's consideration of factors under 18 U.S.C. § 3553 (a),' while departures are a term of art referring to non-Guidelines sentences authorized and 'imposed under the framework set out in the Guidelines.'" *See* United States v. Tirado-Nieves, 982 F.3d 1 (1st Cir. 2020) (quoting Irizarry, 553 U.S. at 714); United States v. Adorno-Molina, 774 F.3d 116 (1st Cir. 2014). After the guideline range is determined, the court may "depart" from the guideline range where "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission." *See* Pepper v. United States, 562 U.S. 476, 494 (2011). "If the court departs from the applicable guideline range, it shall state, its specific reasons for departure in open court at the time of sentencing and…shall state those reasons with specificity in the statement of reasons form." *See* 18 U.S.C. § 3553 (c).

---

[4] "In reviewing a sentence for reasonableness, the Court of Appeals first examine whether, in arriving at sentence, the district court committed any procedural errors, such as failing to calculate, or improperly calculating, the advisory Guidelines range, treating the Guidelines as mandatory, failing to consider the statutory sentencing factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence, including any deviation from the Guidelines range" *See* United States v. Contreras-Delgado, 913 F.3d 232 (1st Cir. 2019).

## IV.   Sentencing Guidelines Calculations

United States Probation ("USPO") calculated the Guideline Sentencing Range ("GSR") in the PSR to be 87 to 108 months, with an additional 60 months consecutive for Count Eleven, which is based on an Offense Level of 27 and a Criminal History Category III. *See* PSR ¶ 45, 86. While the government doesn't not contest the accuracy of the guidelines as calculated by the USPO[5], nevertheless the parties believe that the sentence in the Plea Agreement is still an appropriate and just sentence for DESIR, as supported by 18 U.S.C. § 3553 (a) factors.

Counts Two and Three are grouped with Counts Four through Eight because one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline of applicable to another of the counts pursuant to USSG § 3D1.2 (c). Pursuant to USSG § 3D1.3 (a), the offense level applicable to a Group is the offense level determined in accordance with Chapter Two and Parts A, B, and C of Chapter Three, for the most serious of the counts comprising the Group. Pursuant to USSG § 2.D1.1, the calculation of Counts Four through Eight yields a higher adjusted offense level of 30, as detailed below.

Thus, the defendant's base offense level for Counts Two through Eight is 30 (USSG § 2D1.1 (a) (5) and (c) (5)); the defendants offense level is decreased by 2 because the defendant

---

[5] The government notes that the final PSR – guideline analysis, which utilized the 2024 Guidelines, stands in contrast to the guidelines as agreed to by the parties in their plea agreement and based on the 2023 Guidelines – despite the error in the agreed upon calculations by the parties - the ultimate sentencing recommendation still stands regardless as the appropriate disposition in this case.

9

has clearly demonstrated acceptance of responsibility for the offense (USSG § 3E1.1 (a)); and the defendant's offense level is decreased by 1 because the defendant timely notified authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparation for trial and permitting the court to allocate its resources efficiently (USSG § 3E1.1 (b)). The guideline sentence for Count Eleven is the term of imprisonment required by statute (USSG § 2K2.4). *See* ¶¶ 29, 36, 37, and 39.

### A. Offense Level Computation

### ¶ 29 – Base Offense Level

The Base Offense Level: **30**

The base offense level, found in USSG § 2D1.1, is determined by the Drug Quantity Table at § 2D1.1 (c). The defendant is accountable for the possession with intent to distribute 1,625 grams of cocaine, 406 grams of cocaine base, and 57.41 grams of oxycodone. To obtain a single offense level pursuant to § 2D1.1, Application Note 8 (B), when an offense level involves different controlled substances, each substance is converted to its Converted Drug Weight, as indicated in the table below. Pursuant to § 2D1.1, Application Note 8 (D), 1 gram of cocaine is equal to 200 grams of converted drug weight, 1 gram of cocaine base is equivalent to 3,571 grams of converted drug weight, and 1 gram of oxycodone is equivalent to 6,700 grams of converted drug weight.

| **Drug Name** | **Drug Quantity** | **Converted Drug Weight** |
|---|---:|---:|
| Cocaine | 1,625 gm | 325 kg |
| Cocaine Base ("Crack") | 406.0 gm | 1,449.83 kg |
| Oxycodone (actual) | 57.41 gm | 384.65 kg |

|  | Total | 2,159.48 kg |
|---|---|---|

The defendant is accountable for 2,159.48 kilograms of converted drug weight. According to USSG § 2D.1.1 (a) (5) and (c) (5), an offense involving at least 1,000 kilograms, but less than 3,000 kilograms of converted drug weight has a base offense level of 30.

**¶ 34 – Adjusted Offense Level**

The Adjusted Offense Level is therefore: **30**

**¶¶ 36 – 37 – Total Offense Level**

With prompt acceptance of responsibility, the defendant's offense level is therefore decreased by 3, which brings the Total Offense Level to **27** as calculated by U.S. Probation and as agreed to by the parties.

**V.   Sentencing Recommendation**

18 U.S.C. § 3553 (a) requires a sentencing court to consider specific enumerated factors when determining an appropriate sentence. These factors include the nature and circumstances of the offenses, the history and characteristics of the defendant, the seriousness of the offenses, promoting respect for the law, providing just punishment for the offenses, the need to deter the defendant and others, the need to protect the public from the defendant's crimes, and the need to avoid unwarranted sentencing disparities. *See* § 3553 (a). The Court must impose a sentence which reflects the nature and circumstances of the defendant's offense and his history and characteristics, and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. § 3553 (a) (2). *United States v. Kimbrough*, 128 S.Ct. 558 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing. Section 3553 (a) also mandates that the sentence reflect the seriousness of the offense to, among other things, promote respect for the law, provide just punishment, adequately deter criminal conduct, and protect the public from further crimes of the defendant.

The parties' jointly recommended sentence – including the 84 months of incarceration – is the reasonable and just outcome in this case, especially where the 18 U.S.C. § 3553 (a) factors appropriately consider the nature, scope, and breadth of the defendant's criminal conduct, as well as his personal history. The parties' recommendation is the product of an enormous amount of thought and consideration, and its request of the Court – to apply the significant sentence but not one that is greater than necessary – trusting that the parties' joint recommendation is made with the deliberation that such a request, while not unusual in anyway, is nevertheless a substantial request.

**VI.   Discussion of § 3553(a) Factors:**

Regardless of whether the Court is inclined to accept both the parties' and U.S. Probation's proffered guideline calculation, a sentence of 84 months for the defendant is "sufficient but not greater than necessary." *See* United States v. Gall, 552 U.S. 38, 44 (2007). Such a recommendation is bolstered by the considerations laid out in 18 U.S.C. § 3553 (a), including: 1) the nature and circumstances of the offense; 2) the need for adequate deterrence; 3) the history and characteristics of the defendant; and 4) the need to protect the public from further crimes of the defendant.

**A.   The Nature and Circumstances of the Offense**

The government asserts that the unchallenged factual information contained in the PSR

demonstrates that the nature of the offense firmly supports a sentence of 84 months. The defendant in this case certainly sought to circumvent narcotics and firearm laws and regulations, for personal financial gain, knowing that it was clearly illegal. These decisions were not singular lapses in judgment, but rather a continuous pattern of conduct with the purpose of evading the laws surrounding illegal weapons and dangerous narcotics. Furthermore, the fact that the cooperating witness was directed to DESIR by MILLER is indicative of someone who was in this business beyond the few sales that are at the center of this case.

      The defendant was engaged in a pattern of criminal conduct that extended beyond the sale of cocaine, but it appears he also waded into the sale of another blight in our communities: illegal firearms. The purpose of a firearm is to inflict serious bodily injury or death. The notion that firearms trafficking is a victimless crime, one that merely entails the illegal sale and purchase of firearms, waters down the impact that each gun has as it finds its way to our communities. Additionally, illegal firearms fuel criminal activity, endangering law enforcement officers and civilians alike, while dangerous narcotics create life altering harm. The defendant knew or at the very least should have known that his conduct would ultimately risk public safety and harm others. Alarmingly, the defendant exhibited a similar disregard for human life and the safety of our communities in exchange for his own personal and financial gain regardless of whether he is working in the illegal firearms or narcotics trade.

      The defendant's actions directly undermine public safety and the rule of law. If the defendant were to get a sentence that failed to match the significance of his crimes, it sets a dangerous precedent that such conduct carries minimal consequences. An 84-month sentence is not only sufficient, but it is also not greater than necessary, it is justified to reinforce the

seriousness of these violations. The Court must send a clear message: profiting off the sale of narcotics and illegal firearms will not be tolerated.

### B. Specific and General Deterrence

The Court must also consider the need for the sentence to afford adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553 (a) (2) (B). Here, the Court must be concerned with both specific and general deterrence.

An 84-month sentence is necessary to adequately deter the defendant from reoffending upon his release from custody. This is not a case in which the defendant committed one bad act or where he happened to be caught crossing the line on his worst day. This case did not involve a mistake or momentary lapse in judgment. Rather, the defendant appears to have been trafficking in narcotics over a period of time. DESIR also sold a weapon designed to hurt or kill others – an illegal firearm has no legitimate purpose in our community.

Here, the 84-month sentence sends the message to this particular defendant that he will face serious consequences if he continues to commit offenses that put the public at risk in order for him to financially benefit. DESIR has been involved with the judicial system since he was 16 years old, with his charges escalating as time progresses. *See* PSR ¶ 41-43. This includes like and similar offenses. That said, the defendant has not faced a federal criminal charge until now, at age 33; this is his first moment being adjudged by this Court. The recommended period of incarceration in federal prison will likely make it clear to the defendant that such behavior will not be tolerated; certainly, now as the defendant confronts the serious and sobering realization that he is facing significant federal incarceration.

An equally important consideration here is general deterrence. Across the board, this sentence will demonstrate to similarly situated individuals that those who profit off the misery of

others or financially gain from sending tools of destruction and narcotics into our neighborhoods, will face a substantial period of incarceration. This is especially true for the individuals that are typically surrounded by and associated with DESIR.

The parties recommended sentence here, although not insignificant would send the correct signal to others, imbued with the same hubris, lack of respect for others, and self-centered tendencies that there is no avoiding the serious consequences of conduct like that perpetrated by this defendant or they too will face significant imprisonment. A sentence of 84 months would not only provide just punishment in the form of deterrence for this defendant, but it would also serve to deter others from violating the law and disillusion them from the false belief that providing illegal narcotics and selling firearms is in anyway a worthwhile endeavor for them; the consequences will meet their conduct.

The sentence recommended by the parties is necessary to provide general deterrence to others similarly situated who might be tempted to engage in the same course of conduct. The government believes there is a legitimate concern that other similarly situation individuals may similarly operate under the same misconception and decide to carry out the same behavior. This sentence would demonstrate that these individuals shouldn't be focusing on how better to profit of dangerous narcotics and or deadly weapons, but rather that doing so comes at a cost. It is important that the Court's sentence adequately reflects the severity of the behavior, in order to deter the defendant and others from engaging in the same conduct.

### C. History and Characteristics

This defendant's history and characteristics also weigh in the favor of the 84-month

incarceration sentence being recommended by the parties. *See* 18 U.S.C. § 3553 (a) (1). The defendant's criminal and personal history documented in the PSR is concerning both because of what it says, but also rather for what is noticeably absent.

The 33-year-old defendant was born and raised in Brockton, Massachusetts. DESIR, a child of a single mother and a majority absentee biological father, was supported and provided with a stable home because of his mother, who worked hard as the sole provider. DESIR's biological father was deported to Haiti when DESIR was a toddler. The two have since had very little, if any, contact and therefore, he did not grow up with a father figure in the home. The defendant never endured physical, sexual or verbal abuse at home; however, the defendant's brother has a history of abusing the opiate Percocet for several years and, at the family's insistence, has engaged in substance use disorder programs more than once, but continues to use the illicit substance. *See* PSR ¶ 57. So, it seems particularly disquieting that the defendant here has chosen to engage himself in the drug trade despite the immediate family impact.

There is an inference in the PSR that the absence of the defendant's father during his life has contributed to his criminal history and poor decision making. While that may be a viable inference, the defendant moved out of the family residence, and in with his girlfriend, along with her daughter from a previous relationship and the couple's young son, at her residence in Taunton, Massachusetts. The two have been together since around 2020. As an individual who grew up without a father figure, DESIR wants to provide his son, who he welcomed in 2023, with the fatherly guidance that he did not receive as a child, and this desire is admirable and worthy of consideration. *See* PSR ¶¶ 62, 64. The defendant has demonstrated genuine remorse with the realization that his conduct has consequences not only on the safety of the public but importantly, since it has now risen to a level of significance here in federal court, but that it also

16

has an impact on his life and future and more importantly on his family; and this sentiment is clearly a motivating factor for his future absent criminal conduct.

Nevertheless, the defendant's behavior in this case is concerning because it demonstrates that despite an environment that appeared supportive and stable through his formative years and the potential for a fulfilling future and family life, still he chose to engage in this criminal behavior. The government fears that without a significant period of incarceration that the parties are requesting here, the consequences of these choices will not be corrected, and his actions will go without meaningful consequence. The parties believe that the jointly recommended sentence will both account for the defendant's poor choices and destructive behavior, while providing him the opportunity at being the father and the partner he would like to become in the future.

### D. Need to Protect the Public

Finally, a significant sentence is also appropriate pursuant to 18 U.S.C. § 3553 (a) (2) (C) to protect the public from this defendant. The defendant's conduct should cause concern for the communities of the Commonwealth of Massachusetts. By his conduct in this case, the defendant has proven himself willing and able to engage in risky and dangerous behavior by illegally providing narcotics and firearms to those who should not have them. Furthermore, he has certainly shown his reckless disregard for public safety in his willingness to continue with a crime, which damages our communities, despite his awareness of the obvious consequences or outcomes resulting from his crime. The defendant's firearms business is one that is equally concerning and demonstrative of his willingness to put profit before the health and wellbeing of the public and their safety. The government believes that DESIR's desire to be a better person for his family is sincere. DESIR by taking responsibility for his past actions, and early in this case, is clearly looking to the future, and one without drugs or guns.

A substantial sentence is necessary to deter similar conduct, ensure accountability, and prevent the potential for future incident. That said, given DESIR's age, history, and lack of previous federal criminal charges, he should receive an 84-month sentence to afford those in his community the knowledge that concern for their safety is an important consideration for the system of justice.

## CONCLUSION

While the defendant should be held appropriately responsible for choices he has made, because to do otherwise minimizes the impact of his decisions, there effect on others, and the safety of the public at large. Nevertheless, his wish to end the interfamilial cycle of trauma and abandonment, along with his honest remorse for the impact his decisions have had on his family, should also be reflected in this sentence by providing an opportunity for him to make good on that wish. For all the foregoing reasons, the parties respectfully, jointly recommend that the Court impose a sentence of 84 months of imprisonment, 36 months of supervised release, the mandatory special assessment of $800, fines, forfeiture, and any Special Conditions the Court deems necessary. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offenses and the goals of sentencing.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By: _____
LUKE A. GOLDWORM
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants .

                                                                                 _____
LUKE A. GOLDWORM
Assistant United States Attorney

Date: June 11, 2025